Alexander Del Giorno, J.
This is a claim to recover for personal injuries sustained by claimants and for property damage to the automobile owned by claimant Frank Massar as a result of the alleged negligence of the State.
On February 12, 1957, claimant Frank Massar was operating his automobile along the Thruway in an easterly direction from Buffalo. The other claimants, his wife and children, were passengers therein. He had driven along this road on five or six prior occasions. At about 1:3Q a.m., in the vicinity of Clifton Springs, while proceeding at a speed of 58 to 60 miles per hour, he reached a point between exits numbered 43 and 44, at milepost 342. He testified that he saw an object on the road, that the hood of his car went up and that he veered to the left. Although *196 he did not know at that moment that his car had collided with a deer, he stopped the car, got out and saw the still warm body of a deer to the right of the car, about 40 feet back of the car, on the shoulder of the road. A passing motorist, whose identity he does not know, stopped his car and joined him, and together they moved the deer further away from the concrete road. Claimant noticed hair and blood on his car. The other motorist towed his car to a rest area, and State troopers arrived and made an investigation. It was later towed to Walter’s Garage at Clifton Springs.
Claimant testified that as he travelled from Buffalo, he had seen “Deer Crossing” signs, but that the last such sign was 10 miles distant from the scene of the accident, at milepost 352. At the time, all members of his family were asleep in the car, although he himself was not tired, having arisen at 12:15 p.m. His headlights were on, the beam extending 125 feet ahead. The road had been in a straight line for many miles and was straight at the time of impact. After the collision, the wheel of the car was jerked to the left, but claimant forced it back to the right. His body was thrown out of position to the right and was twisted.
Claimant and his family stayed overnight and proceeded home the following day, leaving the car to be repaired.
Several days later, he visited a Dr. Schwartz, whom he saw several times. He was treated later by Dr. Bergmeyer and then by a chiropractor, the last medical treatment received having been in April, 1957. The lower part of his back was treated, and he suffered headaches, loss of sleep and loss of appetite. Dr. Bergmeyer testified that he treated him for severe sprain of the lower back. He could not testify whether such injuries were permanent.
Claimant had been in the tavern business, but, as he was unable to perform his usual duties, sold the business one and one-half years after the accident. Since that time he has worked occasionally.
Raymond Schaffer, a mechanic employed by Walter’s Garage, testified that he is familiar with the Thruway and that he knows of no “ Deer Crossing ” sign at the scene of the accident or of any such signs between that point and milepost 351, where there was such a sign. He stated he did not know of any deer accidents in the vicinity of milepost 342. He testified that there had been •several accidents involving deer and automobiles, and that he judged such was the case from indications of such damage on cars he repaired. He himself saw no such accidents.
*197 At the close of claimant’s case, the State moved to dismiss all claims upon the ground that individually and collectively they had failed to establish a prima facie case of negligence. The motion was granted as to Antoinette Massar, wife of Frank Massar, upon the ground that she had offered no proof to substantiate her claim. The motion was granted as to the children Diane, Gary and Frank, Jr., on the same ground, and on the additional ground that at no time had a guardian ad litem been appointed on their behalf. Decision was reserved as to Frank Massar. The State then rested and moved for judgment.
Claimant contends that the State was negligent in failing to erect or maintain a sign on the highway within a reasonable distance of the area in which the accident occurred warning motorists of deer crossings, although it had or was charged with knowledge of deer crossings for at least one year prior to the accident. Negligence is predicated upon common-law principles and upon violation by the State of the Rules and Regulations of the State Traffic Commission as contained in the Manual of Uniform Traffic Control Devices.
The State is not liable for injuries or damages resulting from accidents on its highways between the public and wild animals. It acts in the nature of a trustee for the People of the State for these animals. The mere fact that the State has undertaken to protect them by means of fish and game laws does not render the State liable. The Government has the right to protect wild animals for the benefit of the public at large, and no one has the right to complain of incidental injuries which may occur as a result. (Barrett v. State of New York, 220 N. Y. 423; Anthony v. State of New York, 204 Misc. 241; Corron v. State of New York, 170 Misc. 811; Mann v. State of New York, 47 N. Y. S. 2d 553.)
The State is not an insurer of its highways and has no obligation, except as it may voluntarily assume such obligation, to protect its highways against the use thereof by deer or other wild animals while in their natural state. (Morrison v. State of New York, 204 Misc. 224.)
The “Manual of Uniform Traffic Control Devices” issued by the Traffic Commission, in effect at the time involved herein, at pages 55 and 56 thereof, in relation to “ deer crossings”, provided as follows;
“ This sign shall be used on both sides of locations where deer cross a highway in a well-defined path and evidence exists that this crossing constitutes a traffic hazard. When so used it should be placed 300 feet in advance of the crossing.
*198 * ‘ It may also bo used to sign a zone where deer cross at random along a stretch of highway, thereby creating a hazard to traffic. When so used it should be erected 300 feet in advance of the beginning of the zone and at intervals of % mile within the zone. If the zone is % mile or less in length, a sign will be required only at the beginning of the zone. The end of the zone will not be posted by a sign.
“ When used to sign a zone, each sign shall be supplemented by a W 142 Auxiliary Mileage sign. The W 142 sign at the beginning of the zone shall state the entire length of the zone in terms of the nearest % mile. The W 142 sign supplementing the intermediate signs shall state the distance to the end of the zone in terms of the nearest :l/t mile.
“ This sign shall be used only after a careful determination has been made of the locations of deer crossings; These may be obtained by consultation with the local game protector. It may not be used on state highways without an order of the State Traffic Commission. The State Conservation Department will be consulted by the State Traffic Commission before an order for the use of this sign will be issued. ’ ’
It is to be noted that as to random crossings, the language of the statute is permissive, not mandatory.
There is no evidence in the record that any order was issued by the State Traffic Commission directing the use of such sign in the vicinity of the accident, and the erection of such sign therein was prohibited. (Morrison v. State, supra.)
Further, the testimony of Mr. Schaffer did not establish the existence of a traffic hazard caused by deer crossing. He testified that he himself did not know of any deer accident in the vicinity where the instant accident occurred and he testified also that he himself had not seen any accident which involved a dem- and an automobile on the Thruway. As to these latter accidents, which he surmised had involved automobile and deer because of his later inspection of the cars, the evidence failed to establish in any event that such alleged accidents on the Thruway occurred under conditions similar to the case at bar. No testimony was introduced as to any specific accident or location thereof or the circumstances thereof.
Claimant has failed to establish negligence by the State in the operation, maintenance and control of the Thruway.
The motion heretofore' made by the State at the close of claimants’ case is hereby granted, and the claim of Frank Massar is dismissed.
*199 Accordingly, the claims of- Frank Massar, Antoinette Massar, Diane Massar, Gary Massar and Frank Massar, Jr., are hereby dismissed.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.