877 P.2d 1085 (1994)
117 N.M. 781
Dawn Marie LERMA, by her next friend, Emilio S. LERMA, Plaintiff-Respondent,
v.
STATE HIGHWAY DEPARTMENT OF NEW MEXICO, Defendant-Petitioner.
No. 20506.
Supreme Court of New Mexico.
June 23, 1994.
Weinbrenner, Richards, Paulowsky & Ramirez, P.A., Manuel I. Arrieta, Las Cruces, for petitioner.
Brower and Slavin, P.C., Ken Slavin, El Paso, for respondent.

OPINION
RANSOM, Justice.
Emilio S. Lerma, as next friend of his daughter Dawn Marie Lerma, appealed to the Court of Appeals from the trial court's entry of summary judgment dismissing Lerma's personal injury action against the State Highway Department. In an unpublished opinion, the Court of Appeals reversed. We issued a writ of certiorari to review two issues: (1) whether the Court of Appeals erred by imposing a common-law duty upon the Department to maintain a fence for the protection of pedestrians; and (2) whether, *1086 as a matter of law, Dawn's intentional act of crossing the interstate was the sole proximate cause of her injuries. We affirm the Court of Appeals and remand this case to the trial court.
Facts and proceedings. On October 23, 1986, thirteen-year-old Dawn Lerma and two friends climbed over a fence along Interstate 25 near the Mesilla Valley Mall in Las Cruces. The friends crossed the highway first and warned Dawn to wait for a vehicle to pass. Dawn did not wait and was hit by the oncoming car. Emilio Lerma filed an action on Dawn's behalf, seeking compensation for her personal injuries. Lerma alleged that the Department had a statutory and common-law duty to maintain the fences along the highway for the protection of the pedestrian traffic.
According to evidence presented at the summary judgment hearing, the Department was aware that people often crossed the highway in this area and had attempted to make climbing the fence or going under it harder by adding barbed wire and rocks. Further, according to Department regulations, the fences along that highway are supposed to be six feet high and the fence that Dawn climbed over was approximately four feet high. Lerma alleged that the Department breached its duty by not maintaining six-foot fences and that this breach was the proximate cause of Dawn's injuries.
The Department moved for summary judgment, arguing that it did not have a duty to protect pedestrians from the dangers of the highway. The district court agreed and granted the Department's motion. On appeal, the Court of Appeals determined that the Department did not have a statutory duty to protect pedestrian traffic, but that it did have a common-law duty to "conduct its activities in a reasonable manner and to exercise ordinary care for the safety of others." The Court concluded that the question whether the Department breached this duty was a question of fact that precluded summary judgment.
The Department does not have a statutory duty to protect pedestrian traffic. Lerma argues that the Department has a statutory duty to maintain fences along public highways for the protection of pedestrians, citing for support NMSA 1978, Section 30-8-13(B)(1) (Repl.Pamp.1984) ("Unlawfully permitting livestock upon public highway."). Under this Section, the Department is required to "construct, inspect regularly and maintain fences along all highways under its jurisdiction." Lerma contends that the Department breached its duty by constructing a fence that was only four feet high and by failing to maintain that fence.
In Mitchell v. Ridgway, 77 N.M. 249, 252, 421 P.2d 778, 780 (1966), this Court stated that the purpose of Section 30-8-13 (then codified as NMSA 1953, Section 40A-8-10) was to protect the motoring public from wandering livestock. This statement has been reaffirmed in several Court of Appeals cases, including Fireman's Fund Insurance Co. v. Tucker, 95 N.M. 56, 59, 618 P.2d 894, 897 (Ct.App.), cert. quashed (Oct. 9, 1980), in which the Court reviewed the history of the statute and determined that the purpose of the statute was to place on the Department the burden of keeping livestock off public highways. See also Roderick v. Lake, 108 N.M. 696, 699, 778 P.2d 443, 446 (Ct.App.) (stating that purpose of the statute is to protect the motoring public), cert. denied, 108 N.M. 681, 777 P.2d 1325 (1989). It is apparent that the Department's only duty under the statute is to construct and maintain the fences in such a way as to prohibit livestock from entering the highway. The statute does not contain any language that would place a duty on the Department to construct and maintain the fences in order to prohibit pedestrians from crossing the road.
Lerma argues that the intent of the statute is evident because of the holdings in Cardoza v. Town of Silver City, 96 N.M. 130, 628 P.2d 1126 (Ct.App.), cert. denied, 96 N.M. 116, 628 P.2d 686 (1981), and Rickerson v. State, 94 N.M. 473, 612 P.2d 703 (Ct.App.), cert. denied, 94 N.M. 675, 615 P.2d 992 (1980). In Cardoza, our Court of Appeals stated that a municipality has a duty to maintain city streets and sidewalks with due care. 96 N.M. at 134, 628 P.2d at 1130. In Rickerson, our Court of Appeals held that the Department may be held liable for its failure to install traffic signals because such failure *1087 may constitute negligence in the maintenance of a highway, roadway, or street. 94 N.M. at 476, 612 P.2d at 706. Lerma contends that these holdings indicate that the purpose of any statute requiring maintenance of a highway is for the protection of the general public, including pedestrians. These cases, however, do not support the contention that Section 30-8-13 requires the Department to maintain the fences to prevent children from crossing the highway. We decline to hold that the Department had a statutory duty to maintain the fences for the protection of pedestrians.
The Department has a common-law duty to exercise ordinary care in the protection of the public from foreseeable harm. Lerma also argues on appeal that the Department has a common-law duty to "conduct its activities in a reasonable manner and to exercise ordinary care for the safety of others," citing for support Knapp v. Fraternal Order of Eagles, 106 N.M. 11, 738 P.2d 129 (Ct.App.1987). In Knapp, the Court of Appeals recognized that "every person has a duty to exercise ordinary care for the safety of others." 106 N.M. at 13, 738 P.2d at 131; see also SCRA 1986, 13-1604 (Repl. Pamp.1986). We agree with that principle and determine that the Department has always had the common-law duty to exercise ordinary care to protect the general public from foreseeable harm on the highways of the state. If the Department is found to have breached this duty by negligently failing to erect or maintain fences along the highway, it may be held liable because such negligence falls within the waiver of sovereign immunity. See NMSA 1978, § 41-4-11(A) (Repl.Pamp.1989) (stating that sovereign immunity does not apply to liability damages caused by negligence in the maintenance of highways).
In defining the duty to use ordinary care, the Court of Appeals stated that "once [the Department] undertook to build a fence along its highway, [it] had a duty to exercise ordinary care for the safety of others when erecting and maintaining the fence." The Court based this statement on our holding in Calkins v. Cox Estates, 110 N.M. 59, 64, 792 P.2d 36, 41 (1990), wherein we stated, "when a landowner undertakes to provide a common area for the use of his tenants, he undertakes to maintain it in a reasonably safe condition." We believe the Court of Appeals erred in basing the Department's maintenance duty on the fact that the Department undertook to build a fence.
In Calkins, the determinative issue, and that which divided the majority and the dissent, was not whether the landowner owed a duty to the child of a tenant because the landlord "chose to erect a fence and he reaped the economic benefits from providing a fenced play area at the complex," id. at 63, 792 P.2d at 40; rather, in relation to highway traffic giving rise to a fatality one-fifth of a mile away, it was "whether a lessor owes a duty of care to his tenants to maintain the common areas of the leased premisesin this case a playground adjacent to an area leading to a highwayin a reasonably safe condition." Id. at 61, 792 P.2d at 38. In that regard, the Court held that "when a landowner undertakes to provide a common area for the use of his tenants, he undertakes to maintain it in a reasonably safe condition." Id. at 64, 792 P.2d at 41.
In this case, the determinative issue is whether the Department has a duty to exercise ordinary care in the maintenance of its highways. As stated above, we believe that the Department has such a duty. It is for the factfinder to decide whether this duty includes either the erection or maintenance of fences along an urban freeway.
The jury is to determine issues of comparative negligence and proximate cause. Because we are remanding this case for a determination of whether the Department breached its duty to exercise ordinary care, we must address the argument made by the Department that Dawn's action of crossing the highway was the sole proximate cause of her injuries. In essence, the Department is arguing that because Dawn crossed the road, despite the existence of a fence and warnings from her friend, Dawn should be held, as a matter of law, responsible for the full percentage of her injuries and the Department should be held not responsible for any percentage of the injuries under comparative negligence.
With few exceptions, proximate cause is a question of fact to be determined by the *1088 factfinder. Baker v. Fryar, 77 N.M. 257, 262, 421 P.2d 784, 786 (1966). The only time that this is not true is "when facts regarding causation are undisputed and all reasonable inferences therefrom are plain, consistent and uncontradictory." Chavira v. Carnahan, 77 N.M. 467, 469, 423 P.2d 988, 989 (1967). Similarly, the question of comparative fault is an issue of fact to be determined by the factfinder. Cf. Koenig v. Perez, 104 N.M. 664, 667, 726 P.2d 341, 344 (1986) (stating that question of comparative fault of parties involved genuine issues of material fact that precluded summary judgment). In this case, all reasonable inferences are not plain, consistent, and uncontradictory; therefore, the issues of proximate cause and comparative negligence are to be decided by a factfinder.
The fact that the danger may have been open and obvious would not obviate a duty on the part of the Department to protect the public from the public's own foreseeable negligence. See Klopp v. Wackenhut Corp., 113 N.M. 153, 157, 824 P.2d 293, 297 (1992) (holding that "some degree of negligence on the part of all persons is foreseeable" and should be taken into account by the owner or occupier of a premises in the discharge of a duty to safeguard those who foreseeably may be injured by a danger avoidable through reasonable precautions). In determining the comparative negligence of Dawn in this case, the factfinder is to be reminded that the standard to be applied is whether Dawn "exercised that degree of care ordinarily exercised by children of like age, capacity, discretion, knowledge and experience under the same or similar circumstances." Saul v. Roman Catholic Church, 75 N.M. 160, 164, 402 P.2d 48, 51 (1965).
Conclusion. For the foregoing reasons, the trial court's entry of summary judgment in favor of the Department is reversed. This case is remanded for proceedings consistent with this opinion.
IT IS SO ORDERED.
MONTGOMERY, C.J., and FRANCHINI, J., concur.